IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIA RIELINGER, | ) | CASE NO. 1:26-cv-00995 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE. |
| | ) | |
| -vs- | ) | |
| | ) | |
| CLEVELAND CHINATOWN | ) | **DEFENDANTS' CONSOLIDATED** |
| DEVELOPMENT LLC, et al. | ) | **MOTION FOR JUDGMENT ON**. |
| | ) | **THE PLEADINGS** |
| Defendants, | ) | **(Federal Rule of Civil Procedure)** |
| | ) | **12(c))** |

## I.    INTRODUCTION

In the case at bar, the Plaintiff has attempted to plead potential claims for relief which, as to these three Defendants, stem entirely from a now final judgment in the Cleveland Municipal Court.  The final judgment in the Cleveland Municipal Court case stemmed from a commercial  eviction action.  Because the entirety of the attempted claims against the Defendants herein do not plausibly state a potential claim for relief, her Complaint should be dismissed in its entirety.

In the first instance, this Court is without subject matter jurisdiction to consider any of the Plaintiff's claims against these Defendants.  Indeed, since the alleged claims against the Defendants herein were the subject of and inextricably intertwined with a final judgment from the Cleveland Municipal Court, this Court is without subject matter jurisdiction to consider the Plaintiff's claims due to the case law set forth in the so-called "Rucker-Feldman" doctrine, which does not permit a federal district court to act as a court of appeals for a final state court civil judgment.

In addition, even if this Court were vested with subject matter jurisdiction, which it is not, the doctrines of claim and issue preclusion would apply so to act as a complete bar to Plaintiff's claims against these Defendants.

Finally, the Plaintiff's 42 USC § 1983 claims for deprivation of rights under color of law, to the extent that they are alleged against these Defendants, fail to state a claim because the Defendants herein are neither state actors nor acting under color of law.

## II.     FACTUAL ALLEGATIONS IN THE PLEADINGS

Plaintiff filed her Second Amended Complaint on or about March 24, 2026. These Defendants filed their Joint Answer to Plaintiff's Second Amended Complaint on or about May 20, 2026.  Accordingly, as to these Defendants and the Plaintiff, the pleadings are closed.

Plaintiff's Second Amended Complaint makes the following relevant averment of facts:

    (1)    That Plaintiff had no signed lease with the Defendant Cleveland Chinatown Development LLC and that same Defendant did not serve the complaint for eviction on either the Plaintiff or the companies in which she invested (paragraph 16 of the Second Amended Complaint);

    (2)    That the Defendants herein failed to provide Plaintiff and/or her other companies with a safe and habitable commercial space, refusing to repair severe flooding, structural defects, failing to remedy pervasive rat infestations, and preventing the businesses from ever opening for operation such that Plaintiff could not recover her investment (paragraph 17 of the Second Amended Complaint);

    (3)    That the Judgment of Eviction which these Defendants obtained in the Cleveland Municipal Court was void for a failure of service (paragraph 17 of the Second Amended Complaint);

2

(4)     That due to the void eviction judgment, Plaintiff was damaged by losing $800,000.00 with the property that she brought for her company (paragraph 17 of the Second Amended Complaint);

(5)     That Defendant Cleveland Chinatown Development, LLC actually breached the lease agreement (paragraph 17 of the Second Amended Complaint);

(6)     That the eviction actions filed in the Cleveland Municipal Court were retaliatory (paragraph 19 of the Second Amended Complaint);

(7)     That Plaintiff was improperly named as a Defendant in the eviction action that resulted in final judgments (paragraph 21 of the Second Amended Complaint);

(8)     That the Defendants removed business property belonging to the Plaintiff, including equipment and inventory, while acting pursuant to the judgment of eviction (paragraph 23 of the Second Amended Complaint);

(9)     That after the final judgment of eviction and writ of restitution, that the Defendants obtained a writ and changed the lock on the gates which was the only access to the property within the formal rental units (paragraph 24 of the Second Amended Complaint);

(10)    That as a result of the Defendants filing an eviction action, Plaintiff was damaged in her reputation, credit, and business prospects (paragraph 27 of the Second Amended Complaint);

(11)    That these Defendants acted jointly and under color of state law by obtaining and executing judicial orders fraudulently and then using those void orders of judgments to enter property and destroy belongings (paragraph 29 of the Second Amended Complaint);

From these allegations against these Defendants, all of which were either the direct subject of the state court eviction action or inextricably intertwined therewith, Plaintiff alleges in what is often poorly pled form, several alleged causes of action; namely, intrusion upon seclusion, intentional racial hatred and blackmail (Count I);

intentional infliction of emotional distress (as a result of the evictions) (Count II); civil conspiracy depriving Plaintiff of her property subsequent to the final judgments of eviction (Count III); conversion by removing Plaintiff's property pursuant to a court order and judgment entry (Count IV); civil theft and trespass to chattels as a result of removing and destroying property subsequent to the state court judgment entry of eviction (Count V); criminal damage, once again resulting from the removal of Plaintiff's property pursuant to the judgment entry of eviction (Count VI); defamation for suing and obtaining a judgment of eviction against the Plaintiff and her companies and listing her as a Defendant in the eviction actions (Count VII); tortious interference as a result of evicting Plaintiff and her companies pursuant to a judgment entry by the state court (Count VIII); violation of the Fourteenth Amendment right to due process under 42 U.S.C. § 1983 by obtaining a void judgment entry and void order of execution from the state court (Count IX); unreasonable seizure of property in violation of the Fourth Amendment under 42 U.S.C. § 1983 for removal of Plaintiff's property pursuant to the court orders of eviction and execution (Count X); civil rights conspiracy under 42 U.S.C. § 1985 for knowingly and intentionally conspiring to obtain unlawful eviction orders and to use those orders to seize and destroy Plaintiff's business property (Count XI); retaliatory eviction for exercising legal rights and interference under 42 U.S.C. § 1983 by failing to provide Plaintiff's companies safe and habitable premises and instituting eviction actions resulting in a final judgment and order of execution (Count XII); fraud upon the state court for knowingly making false sworn statements in the eviction court regarding service of process (Count XIII); breach of lease and implied warranty of habitability for Defendants failing to maintain habitable premises (Count XIV); interfering

with  business expectancy and economic advantage by failing to make required repairs and providing a safe and habitable premises (Count XV); finally, Plaintiff requests punitive damages for all of these allegations relating to the final judgment in the state court for eviction (Count XVI).

## III.     LAW AND ARGUMENT

### A.     Standard of Review

Federal Rule of Civil Procedure 12(c) provides that:  "After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings."  FRCP 12(c).  The legal standard for reviewing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard applied to a motion to dismiss under Rule 12(b)(6).  *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

In order to survive a motion for judgment on the pleadings, the complaint must contain either direct or inferential allegations with regard to all material elements necessary for recovery under a viable legal theory.  *Philadelphia Indemnity Insurance Company v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013).  When construing the complaint, the court must do so in the light most favorable to the non-moving party and accept all well pleaded material factual allegations as true.  *Winget*, 510 F.3d at 581.  However, the court must also determine whether those factual allegations, even when accepted as true, actuality state a plausible claim for relief.  *Winget, supra*.; *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  Nevertheless, this Court need not accept as true legal conclusions or unwarranted factual inferences.  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).  Accordingly, a motion for judgment on the pleadings

5

is properly granted when "**all well pleaded material allegations**" (emphasis added) of the opposing party are taken as true and, nevertheless, the moving party is clearly entitled to judgment.  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332.

In the case at bar, while there is nearly a complete paucity of well pled material allegations, as opposed to unwarranted legal conclusions and misleading factual inferences, crediting any well-pleaded material allegations of the pleadings that remain, it is beyond doubt that the Defendants herein are entitled to judgment as a matter of law as there is no genuine set of facts that this Plaintiff could ever prove that would entitle her to relief.

**B.** **This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Against These Defendants Under the So Called "Rooker-Feldman" Doctrine**

Under the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction to review final judgments, as well as interlocutory orders, from state courts.  *Kovacic v. Cuyahoga County Department of Child and Family Services*, 606 F.3d 301, 309 (6th Cir. 2010); *RLR Investments, LLC v. City of Pigeon Forge*, F.4th 380, 396 (6th Cir 2021).

The doctrine began inconspicuously in 1923 when the United States Supreme Court dismissed a federal lawsuit seeking to declare a state trial court's judgment "null and void" after it had already been affirmed by the state's supreme court. *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 414 (1923).  *Rooker* was based upon a section of the judicial code which has now been codified at 28 U.S.C. § 1257 which permits only the United States Supreme Court to review appeals from state supreme courts.  *Id*. at 416.  Thus, if appeals from the highest state court could only be heard by

6

the United States Supreme Court, it followed that federal district courts could not hear such appeals.

Sixty years later, the United States Supreme Court relied on *Rooker* in dismissing a federal lawsuit as an attempted appeal of a lower state court's bar admission ruling.[1]  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Importantly, the Supreme Court in *Feldman* went on to hold that federal district courts lack jurisdiction over claims "inextricably intertwined with state court decisions." *Id*. at 482, n.16,  486.

In the case at bar, it is beyond any dispute that from what can be gleaned from the allegations of Plaintiff's complaint as it relates to the Defendants herein, that all of her claims are inextricably intertwined with the state court judgment granting eviction of her and her companies along with the order in aid of execution that followed soon thereafter.  Both of these final state court judgments were completed prior to the inception of the present action in the District Court of New Hampshire.

Following the logic of *Feldman, supra*, the Sixth Circuit Court of Appeals went on to hold that "a party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *United States v. Owen*, 54 F.3d 271, 274 (6th Cir. 1995).  Indeed, the Sixth Circuit does not require a state court judgment to have been finalized after the

---

[1]  Actually a District of Columbia court.

exhaustion of all appeal rights.[2]   *RLR Investments, LLC v. City of Pigeon Forge, supra*, at 393,396.

The United States Supreme Court revisited the Rooker-Feldman doctrine in *Exxon Mobile Corp. v. Saudi Basic Industries*, 544 U.S. 280 (2005).  Therein, the court held that the doctrine "bars federal district courts from exercising jurisdiction over cases brought by state-court losers seeking review and rejection of state-court judgments rendered before district court proceedings commenced."  *Id*. at 280, 284.

Just last month, the United States Supreme Court quietly ratified the approach that has been utilized in the Sixth Circuit when it held that the Rooker-Feldman doctrine bars federal district court jurisdiction over cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district courts proceedings commenced and seeking district court review and rejection of those judgments, **regardless of whether the state court judgment remains subject to further review in state appellate proceedings.**  T.M. v. University of Maryland Medical System Corporation, et al., 608 U. S. _____ (2026).

Thus, in the case at bar, the following facts are undisputed:  There was a final judgment by a state court regarding the same issues presented in the case at bar and/or inextricably intertwined with those issues.  That final judgment was not appealed to the highest court in the state of Ohio.  Therefore, there was no appeal to the United States Supreme Court.  However, under the *T.M. v. University of Maryland Medical System Corporation* decision, a state court judgment rendered before the district court

---

[2]   In the underlying state court eviction action, Plaintiff did attempt to appeal the eviction judgments of the Cleveland Municipal Court but because she attempted to do so, pro se, the Eighth District Court of Appeals dismissed her appeal because she had previously been designated a "vexatious litigator" in the state courts of Ohio.

proceedings commenced, such as in the case at bar, which seeks district court review and rejection of those judgments is barred by the *Rooker-Feldman* doctrine regardless of whether the state court judgment remained subject to further review in state appellate court proceedings.

In the case at bar, none of the allegations regarding the two Defendant herein are other than inextricably intertwined with the eviction action and its resulting underlying final judgments.

Because this court is without subject matter jurisdiction over Plaintiff's claims against these Defendants as they violate the *Rooker-Feldman* doctrine, the claims against the Defendants herein must be dismissed.

**C.      The Plaintiff's Claims Against the Defendants herein are Barred by the Doctrines of Res Judicata and Collateral Estoppel.**

Collateral Estoppel is the doctrine that "once a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation of the same issue on a different cause of action between the same parties. *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 467, n. 6 (1982).  Moreover, state court litigation has collateral estoppel effect in subsequent 42 U.S.C. § 1983 litigation. *Allen v. McCurry*, 449 U.S. 90 (1980).  U.S.C. § 1738 provides that "the…judicial proceedings of any court of any such state…should have the same full faith and credit in every court within the United States and its territories and possessions as they have by law or usage in the court of such state.  The *Kremer* court said that § 1738 requires federal courts to accord preclusive effects to state court judgments in proceedings and that "nothing in the language of  § 1983 remotely expresses any congressional intent to contravene the common law rules of preclusion or to repeal…§ 1738." *Id*. at 97, 98.

Similarly, res judicata is a doctrine that bars parties from litigating in a subsequent action issues that were or could have been litigated in an earlier proceeding. *Kremer, supra*. The United States Supreme Court applied res judicata in the Section 1983 context in *Migra v. Warren City School District Board of Education*, 465 U.S. 75 (1984). The court unanimously ruled in *Migra*, that a Section 1983 claim was precluded by the earlier state court litigation. Because *Migra's* constitutional claim arose from the same set of facts as the state court suit and because it could have been raised at the same time, res judicata barred the federal court litigation. *Id*. at 83.

Accordingly, in the case at bar, all of the claims and issues presented against the Defendants herein were raised or could have been raised in the state court action whether by answer, affirmative defense, motion or appeal. The fact that they were not raised or were raised but unsuccessfully, the result is the same. These claims are now barred by claim and issue preclusion, formerly known as collateral estoppel and res judicata.

D.      **The Plaintiff's 42 U.S.C. § 1983 Claims are Barred as the Defendants are Not State Actors and Were Not Acting Under Color of Law.**

It is axiomatic that in order to state a valid claim under 42 U.S.C. § 1983 that "state action **must exist**. Merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24 (1980). Indeed, a private entity and its legal counsel do not become state actors under § 1983 merely by filing a lawsuit in a state municipal court. Resorting to the state legal apparatus to settle a private dispute lacks the necessary "joint acts" with state officials to create liability. *Hickey v. Hollister*, 19 F.3d 18 (6th Cir. 1994).

10

In *Kropek v. Sullivan*, 2014 WL 3764022 (E.D. Mich., 2014), the court reviewed a case involving home foreclosure and a subsequent eviction litigation.  In doing so, the court reviewed the landlord and creditor's conduct during the state court proceedings and reaffirmed that the utilization of court litigation, a sheriff sale, and  the eviction process as provided by state law does not constitute state action.

Obviously, Plaintiff's § 1983 claim for constitutional deprivations clearly must fail as a matter of law as they can never constitute state action under the facts alleged in the complaint.

**E.**     **Ohio Law Provides Absolute Immunity for Attorney Statements and Conduct Made During Judicial Proceedings and Litigation**

Ohio's litigation privilege provides absolute immunity to parties, witnesses, lawyers, and judges from civil liability for statements made during and relevant to judicial proceedings. *Reister v. Gardner*, Slip Opinion No. 2020-Ohio-5484, ¶ 8 (Ohio Dec. 3, 2020) (citing *Willitzer v. McCloud*, 6 Ohio St.3d 447, 448-449 (1983); *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), syllabus). The privilege is "an immunity that promotes full and frank advocacy in litigation by protecting the method and content of communications in a judicial proceeding." *Reister*, Slip Opinion at ¶ 8. As the Ohio Supreme Court has recognized, "[f]reedom of speech in a judicial proceeding is essential to the ends of justice." *Id.*

The privilege extends to every step of a judicial proceeding, including statements made in pleadings, affidavits, and other court filings. *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 506 (1994) (holding that an "affidavit, statement or other information provided to a prosecuting attorney . . . is part of a judicial proceeding" and

11

"the informant is entitled to an absolute privilege against civil liability for statements made which bear some reasonable relation to the activity reported").

Plaintiff's Complaint challenges statements made, documents filed, and appearances conducted by Defendant during the eviction proceeding brought against Plaintiff's client. These are precisely the types of activities protected by Ohio's litigation privilege.

The privilege is not limited to defamation claims; it extends to "any claim regarding privileged statements including but not limited to malicious prosecution claims, defamation claims, intentional infliction of emotional distress, civil conspiracy, and aiding and abetting claims." *Daher v. Cuyahoga Cmty. Coll. Dist.*, 2021-Ohio-2103, ¶ 26 (8th Dist.). "[N]o known exception exists to this privilege." *Id.*

Ohio courts have consistently applied the litigation privilege to bar claims arising from statements made in judicial proceedings, regardless of how the plaintiff characterizes the claim. *See Stewart v. Gentile*, 2025-Ohio-5012, ¶ 46 (7th Dist.) ("the litigation privilege bars all civil claims against Appellees for statements and reports [made in judicial proceedings]"). The privilege applies even if the statements at issue are alleged to be false or made with ill will or malice. *Theisler v. DiDomenico*, 140 Ohio App.3d 379, 385 (7th Dist. 2000).

Ohio's litigation privilege is absolute, not qualified. "[A]llegations of willful and wanton conduct do not overcome absolute immunity." *Stewart*, 2025-Ohio-5012, at ¶ 21. The privilege "applies even if the statements made are intentionally false or made with ill will or malice." *Id.* at ¶ 24 (citing *Theisler*, 140 Ohio App.3d at 385). Therefore, Plaintiff's allegations that Defendant acted with malice do not defeat this Motion.

12

In the case at bar, all of Defendant Liang's efforts, both written and verbal, were rendered during either judicial or litigation proceedings.  Accordingly, she is entitled to absolute immunity from all of Plaintiff's claims as they clearly relate to Defendant Liang's conduct in her role as attorney only.

## IV.    CONCLUSION

Accordingly, because there are no well pled allegations that can be interpreted in the present action to create a plausible claim or theory of recovery, there is in reality no set of facts that this Plaintiff could prove that would entitle her to relief despite her unwarranted factual inferences and improper legal conclusion.

Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) should and must be granted.

Respectfully submitted,


/s/ *Paul V. Wolf*
PAUL V. WOLF (0038810)
Law Offices of Paul V. Wolf
700 West St. Clair Ave., Ste. 400
Cleveland, Ohio 44113-1274
(216) 241-0300
Fax:  (216) 241-2731
Email: paulvwolf@hotmail.com
Attorney for Defendants Cleveland
Chinatown Development LLC and
Shaojia Huang

-and-


/s/ *Yan Liang*
YAN LIANG (0088121)
Liang Law Firm, LLC
6105 Parkland Blvd., Ste. 230
Mayfield Heights, OH  44121
(216) 233-0609

13

Fax:  (216) 364-0505
Email:  lianglawfirmllc@gmail.com
Defendant, Pro Se

## PROOF OF SERVICE

The foregoing have been served on this 21st day of July, 2026 upon Plaintiff Julia Rielinger, Pro Se, located at 5 Tsienneto Road, Derry, NH  03038, through the Court's electronic filing system.

/s/ *Paul V. Wolf*
PAUL V. WOLF (0038810)
Attorney for Defendants Cleveland
Chinatown Development LLC and
Shaojia Huang

-and-

/s/ *Yan Liang*
YAN LIANG (0088121)
Defendant, Pro Se