**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JULIA RIELINGER, | ) | Case No. 1:26-cv-995 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| CLEVELAND CHINATOWN | ) | |
| DEVELOPMENT LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiff Julia Rielinger, proceeding without a lawyer, brings this lawsuit alleging violations of her civil rights and various State-law tort claims. Among other things, she alleges that Defendants intentionally misused eviction proceedings in State court in Cleveland, Ohio, resulting in unlawful seizure and destruction of her business and personal property and the collapse of her commercial activities. Defendants move for judgment on the pleadings, which Plaintiff opposes, in part with two declarations. Defendants move to strike those declarations as untimely, and Plaintiff moves for leave to file the declarations one day late. For the reasons that follow, the Court **DENIES** Defendants' motion to strike but declines to consider the declarations for other reasons and **GRANTS** Defendants' motion for judgment on the pleadings.

## BACKGROUND

This case arises from eviction proceedings in State court involving Defendant Cleveland Chinatown Development and Plaintiff Julia Rielinger. The Court takes judicial notice of the State court docket in the following eviction proceedings to better understand the background of the parties' dispute:

- *Cleveland Chinatown Dev. v. Rielinger*, No. 2025-CVG-005572 (Cleve. Mun. Ct.);
- *Cleveland Chinatown Dev. v. Sara Mellott Real Est. Dev. LLC*, No. 2025-CVG-009765 (Cleve. Mun. Ct.); and
- *Cleveland Chinatown Dev. v. Mellot Real Est. Dev. LLC*, No. 2025-CVG-002846 (Cleve. Mun. Ct.).

It does because Plaintiff expressly references these proceedings and the resulting eviction orders in her pleadings. Therefore, the Court can consider the facts from those proceedings because they are "referred to in [the] complaint and central to the claim." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).

In 2025, Ms. Rielinger owned and/or invested in two businesses: Jupiter Global Resources LLC and Sara Mellott Real Estate Development LLC. (ECF No. 14, ¶ 2, PageID #221; *id.*, ¶ 35, PageID #228.) Both Jupiter and Mellott Real Estate were commercial tenants of Defendant Cleveland Chinatown Development LLC: Jupiter leased a property located at 2164 Rockwell Avenue, Cleveland, Ohio, and Mellott Real Estate leased a property at 2166A Rockwell Avenue, Cleveland, Ohio. *Cleveland Chinatown Dev. LLC v. Mellot Real Est. Dev. LLC*, No. 2025-CVG-002846 (Cleve. Muni. Ct.); *Cleveland Chinatown Dev. LLC v. Rielinger*, No. 2025-CVG-005572 (Cleve. Muni. Ct.); *see also* ECF No. 14, ¶ 2, PageID #221. Defendant Nancy Liang,

an attorney, serves as Cleveland Chinatown Development's agent, and she also served as its legal counsel in the eviction proceedings. *Id.*; ECF No. 14, ¶ 5, PageID #220. According to Plaintiff's second amended complaint, Defendant Shaojia Huang is a member of Cleveland Chinatown Development and also serves as its property manager. (ECF No. 14, ¶ 6, PageID #220.)

### A. Evictions

Between February and April 2025, Cleveland Chinatown Development brought separate eviction proceedings against Jupiter and Mellott Real Estate for failure to pay rent. *Mellot*, No. 2025-CVG-002846; *Rielinger*, No. 2025-CVG-005572; *Cleveland Chinatown Dev. LLC v. Mellot Real Est. Dev. LLC*, No. 2025-CVG-009765 (Cleve. Muni. Ct.). In each eviction proceeding, Ms. Rielinger was named as a defendant, and in each case she moved to dismiss because she had no lease agreement with Cleveland Chinatown Development either in writing or verbally. *Id.* Each time, the magistrate in housing court dismissed Ms. Rielinger as an improper party because she did not sign the lease and was not listed on the lease agreements. *Id.* In this action, Ms. Rielinger again asserts that she was not a lessee of Cleveland Chinatown Development and "was not the tenant or registered agent of the tenants." (ECF No. 14, ¶¶ 2 & 17, PageID #221 & #224.)

Following the eviction proceedings in the municipal court, both Jupiter and Mellott Real Estate were ordered removed from the property by bailiff-assisted move out. *Mellot*, No. 2025-CVG-002846; *Rielinger*, No. 2025-CVG-005572; *Mellot*, No. 2025-CVG-009765. And the court entered judgment against both Jupiter and Mellott Real Estate for failure to pay rent. *Id.*

### B. The Facts Alleged

Against this background, in this case the operative complaint alleges the following facts, which the Court takes as true and construes in Plaintiff's favor in the present procedural posture.

According to the second amended complaint, Ms. Rielinger "financially invested in and supported two commercial tenant companies operating" at Cleveland Chinatown Development's property, presumably Jupiter Global Resources and Sara Mellott Real Estate Development. (ECF No. 14, ¶ 16, PageID #224.) But Ms. Rielinger never personally signed any lease agreement with Cleveland Chinatown Development. (*Id.*, ¶ 17, PageID #224.) Instead, Ms. Rielinger financially contributed to Cleveland Chinatown Development's property through rent payments and investments toward improvements, including "HVAC, electrical, plumbing, flooring, and structural build-out" so that the tenant companies had a "safe and habitable commercial space." (*Id.*, ¶¶ 16–17, PageID #224–25.) Despite accepting Ms. Rielinger's financial contributions, Cleveland Chinatown Development refused to repair "severe flooding, structural defects, and pervasive rat infestation," which prevented the tenant companies from opening and operating, and "prevent[ed] Plaintiff from recovering her investment." (*Id.*, ¶¶ 17–18, PageID #225.) Ms. Rielinger requested an inspection of the property, and Cleveland Chinatown Development "retaliated" by filing eviction actions. (*Id.*, ¶ 19, PageID #225.)

Once Cleveland Chinatown Development obtained eviction orders against the two commercial tenants, Defendants "entered the premises and forcibly removed and destroyed business property belonging to Plaintiff." (*Id.*, ¶ 23, PageID #226.)

Sometime before September 22, 2025, Cleveland Chinatown Development changed the lock on the gate where Ms. Rielinger accessed the property at issue, preventing her from "retrieving and moving her $800k worth [of] property out before they were illegally seized on Nov 13, 2025." (*Id.*, PageID #225.) At that point, Defendants entered the premises again and "destroyed additional business property, including $500,000 at least worth [of] medical merchandise, inventory, medical equipment, $250,00[0] worth [of] antique furniture, and $50,000 worth [of] professional tools." (*Id.*, ¶¶ 24–25, PageID #226.)

Cleveland Chinatown Development hired Defendant David Thompson, who is no longer a party in this action, to assist in the removal and destruction of Plaintiff's property. (*Id.*, ¶ 28, PageID #227.) Mr. Thompson allegedly refused to allow Ms. Rielinger to "reclaim, store, or retrieve [her] belongings" and instead stored her property in a "non-climate-controlled" facility at "unit 218 and unit 119, Cube Smart, 5440 S Marginal Street, Cleveland, OH 44114" against Ms. Rielinger's wishes. (*Id.*; *see also id.*, ¶ 35, PageID #228.)

Then, Ms. Rielinger hired Defendants Debra Brown and Philip McCall, both of whom are no longer parties in this action, to take photos and videos of her property "when they were released by Defendant Dave Thompson." (*Id.*, ¶ 35, PageID #228.) Instead of transferring the property on December 13, 2025, as allegedly promised, Dave Thompson "made a back door deal" with Debra Brown and transferred "$500k worth" of Ms. Rielinger's property to Ms. Brown. (*Id.*, ¶ 36, PageID #229.)

Once Ms. Rielinger returned home to New Hampshire, Dave Thompson called her once at 6:00 p.m. "demanding money and making threats relating to Plaintiff's property." (*Id.*, ¶ 39, PageID #229.) Philip McCall allegedly transmitted a "written ransom note" to Ms. Rielinger in New Hampshire "seeking money" and threatening to dispose of her property if she did not comply. (*Id.*, ¶ 40, PageID #229.) Also, Ms. Rielinger alleges that "Defendants further transmitted repeated harassing, profane, and racially hostile communications to Plaintiff in New Hampshire," though it is not clear to which Defendants she is referring, and she does not allege additional relevant facts. (*Id.*, ¶ 42, PageID #230.)

Then, Ms. Rielinger filed this lawsuit alleging financial loss, business destruction, emotional harm, and deprivation of her constitutional rights. (ECF No. 14, PageID #235.) She asserts claims under 42 U.S.C. §§ 1983 and 1985 and under various provision of State law.

**STATEMENT OF THE CASE**

Plaintiff Julia Rielinger commenced this action on November 25, 2025 in the District of New Hampshire. (ECF No. 1.) Later, the case was transferred to the Northern District of Ohio. (ECF No. 20.) Plaintiff named six Defendants, not including a number of John Does. The record shows that Plaintiff perfected service on Defendants Cleveland Chinatown Development and Nancy Liang before transfer of the case to the Northern District of Ohio. (ECF No. 12.) At the time of transfer, the docket did not reflect service on the remaining Defendants: Shaojia Huang; David Thompson; Debra Brown; and Philip McCall. Therefore, the Court ordered Plaintiff

to complete service on all Defendants by May 25, 2026. (ECF No. 21.) Since the entry of that Order, counsel for Defendants Cleveland Chinatown Development LLC and Shaojia Huang (although there is no indication that he was ever served) entered a notice of appearance and filed a joint answer to the amended complaint. (ECF No. 22; ECF No. 23.)

Although Plaintiff filed notices that she completed service on the remaining Defendants (*see* ECF No. 25; ECF No. 27), the Court determined that Plaintiff failed to complete service on them within the required time frame and dismissed them without prejudice. (ECF No. 28.) In dismissing these Defendants, the Court ordered Plaintiff to file a short explanation why she filed documents in this case without advising the Court of *Robert v. Brown*, No. 1:26-cv-103 (N.D. Ohio filed Jan. 15, 2026). (*Id.*)—another case that Ms. Rielinger filed under another name against some of the same Defendants without advising either presiding judge. In doing so, the Court asked Plaintiff to explain whether that lawsuit involves the same core operative facts as the remaining claims in this case. (*Id.*) Nearly three weeks late, Plaintiff filed her explanation and a motion for the Court to deem that filing timely. (ECF No. 37.) Also, Plaintiff requested relief from the Court's order dismissing Defendants David Thompson, Debra Brown, and Philip McCall or, in the alternative, additional time to perfect service. (*Id.*)

The Court noted that Defendant Nancy Liang was in default and ordered the Clerk to enter her default under Rule 55(a) because she failed to answer, move, defend, or otherwise appear in response to Plaintiff's complaint. (ECF No. 29.) In

doing so, the Court directed Plaintiff to file a motion for default judgment, with proper support for all relief sought. (*Id.*) Before the deadline for Plaintiff's motion, Ms. Liang filed a motion to set aside the default and for leave to file an answer. (ECF No. 33.) Plaintiff filed a motion for leave to file an amended complaint on the same day. (ECF No. 34). Nearly two weeks after the deadline, Plaintiff opposed Ms. Liang's motion to vacate the default and moved for default judgment. She did so before explaining why she had multiple lawsuits pending in the Northern District of Ohio against the same Defendants without advising the Court.

On July 6, 2026, the Court granted Ms. Liang's motion to vacate the entry of default. (ECF No. 39.) Although Ms. Liang was properly served on February 23, 2026, and failed to answer or otherwise respond, good cause existed to set aside the default and allow Ms. Liang to defend the action on the merits. (ECF No. 39.) Accordingly, the Court denied Plaintiff's motion for leave to file a motion for default judgment as moot. (*Id.*) The Court also denied Plaintiff's motion for reconsideration of the dismissal of Defendants Thompson, Brown, and McCall and accepted as timely Plaintiff's explanation regarding *Robert v. Brown*. (*Id.*)

The Court warned Plaintiff that any further missed deadline or failure to comply with a Court order would result in dismissal of the case for failure to prosecute. (*Id.*) Finally, the Court limited the case to Cleveland Chinatown Development, Nancy Liang, and Shaojia Huang. These Defendants moved for judgment on the pleadings. (ECF No. 41.) When Plaintiff opposed (ECF No. 42), she

also filed two declarations in support of her opposition: one on September 8 and one on September 9, 2026. (ECF No. 43; ECF No. 44.)

Defendants moved to strike the declarations because they were filed untimely. (ECF No. 45, PageID #339.) Defendants' motion was unnecessary and serves no useful purpose. First, contrary to Defendants' claim, the declaration of Jon Liptak was timely filed on September 8, 2026. (ECF No. 43.) As for the one-day delay in Plaintiff's filing the declaration of Levell Woodruff (ECF No. 44), Defendants should know better than to make a production over such a trivial delay—particularly Ms. Liang after her protracted failure to appear.

Still, the declarations are not proper at the Rule 12 stage of the proceedings. The Court declines to convert the pending motion to one for summary judgment. Therefore, the Court gives them no consideration because they are not part of the pleadings or otherwise present materials proper for consideration on a motion for judgment on the pleadings. *See, e.g.*, *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 602 (N.D. Ohio 2017) (cleaned up). Therefore, the Court **DENIES** Defendants' motion to strike (ECF No. 45) but declines to consider the declarations. Therefore, the Court **DENIES AS MOOT** Plaintiff's motion to accept the Woodruff declaration one day late. (ECF No. 46.)

## JURISDICTION

The Court has subject-matter jurisdiction over Plaintiff's claims for different reasons.

*Federal Question Jurisdiction (Counts IX, X, XI, and XII)*

Plaintiff brings four counts alleging that Defendants violated her constitutional rights. (ECF No. 14, Page ID #233-34.) Specifically, she alleges that Defendants (1) deprived her of her property without due process in violation of her rights under the Fourteenth Amendment; (2) removed and destroyed her property, constituting an unreasonable seizure under the Fourth Amendment; and (3) retaliated against her by initiating wrongful eviction proceedings and seizing her property, all in violation of 42 U.S.C. § 1983. (ECF No. 14, PageID #233-34.) Additionally, Plaintiff alleges that Defendants knowingly and intentionally conspired to obtain unlawful eviction orders, then used those orders to seize and destroy her property in violation of 42 U.S.C. § 1985. (ECF No. 14, PageID #234.) Because these claims arise under federal law, the Court has jurisdiction over them under 28 U.S.C. § 1331.

*Diversity Jurisdiction (All Other Counts)*

For the remaining nine claims that Plaintiff brings under State law, the Court exercises diversity jurisdiction. "[F]or diversity jurisdiction to be proper under § 1332, no plaintiff and no defendant can be the citizen of the same state." *Tennial v. Bank of America, N.A.*, No. 17-6377, 2020 WL 2530872, at *1 (6th Cir. Apr. 15, 2020). Plaintiff is domiciled in New Hampshire, and all Defendants are residents of Ohio. (ECF No. 14, ¶¶ 1–8, PageID #221–23.) Two Defendants are limited liability

companies—Cleveland Chinatown Development and DL Thompson LLC. A limited liability company "has the citizenship of each of its members." *Tennial*, 2020 WL 2530872, at *1. Here, the record does not reflect who the members of Cleveland Chinatown Development are, Cleveland Chinatown Development did not identify its members or their citizenship, and it did not file a corporate disclosure statement, which would identify its members. Defendants denied Plaintiff's allegation that the Court has diversity jurisdiction "because at the time of the events giving rise to this cause of action, all the parties were residents of the State of Ohio." (ECF No. 23, ¶ 8, PageID #11.) Based on Defendants' failure to disclose its members and to comply with the Local Rules by filing a corporate disclosure statement, the Court takes this position in the answer as an admission that the members of Cleveland Chinatown Development are residents of Ohio. Further, no evidence in the record supports treating Ms. Rielinger as anything other than a resident of New Hampshire. Therefore, there is complete diversity between these parties.

As for DL Thompson, it is not clear that Plaintiff brings any claims against this entity. Instead, she sued David Thompson individually. (ECF No. 14, ¶ 7, PageID #222.) The rest of Plaintiff's complaint discusses the actions of Mr. Thompson individually, and no count names DL Thompson LLC. For these reasons, the Court disregards DL Thompson LLC as a Defendant. Moreover, Plaintiff alleges complete diversity, and no information in the record supports a contrary determination for any members of DL Thompson LLC.

With respect to the amount in controversy, Plaintiff asserts various property interests, including financial investments in the two commercial tenants, Jupiter and Mellott Real Estate, rent payments to Cleveland Chinatown Development, payments toward physical improvements to Cleveland Chinatown Development's building, and stolen or damaged property, including medical equipment and inventory, antique furniture, and professional tools kept in the building. (ECF No. 14, ¶¶ 16–17 & 24–25, PageID #224–26.) These losses, Plaintiff alleges, amount to over $2 million. (*Id.*) For these reasons, the allegations meet the jurisdictional amount in controversy and give the Court subject-matter jurisdiction under 28 U.S.D. § 1332.

## ANALYSIS

Defendants filed a consolidated motion for judgment on the pleadings. (ECF No. 41.) "The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). Rule 12(c) provides that, once "the pleadings are closed" a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).

Therefore, on a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). While "the court's decision rests

primarily upon the allegations of the complaint[,]" "exhibits attached to the complaint may also be taken into account." *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 602 (N.D. Ohio 2017) (cleaned up). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Bates*, 958 F.3d at 480 (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

## I. Constitutional Claims

To begin, the Court considers Plaintiff's constitutional claims. Plaintiff brings these claims on a joint-action theory of State action, asserting that Defendants coordinated with the municipal court and local enforcement personnel to proceed with the eviction and to obtain void eviction orders. (ECF No. 14, PageID #233–34.)

### I.A. Section 1983 Claims

Under 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated her Fourth and Fourteenth Amendment rights. (ECF No. 14, PageID #233–34.) Specifically, she claims that Defendants "acted under color of state law" by obtaining and executing "void eviction orders" and depriving Plaintiff of her property without due process of law. (*Id.*, PageID #233 (Count IX).) For her Fourth Amendment claim, Plaintiff alleges that Defendants used the void eviction orders to remove and destroy her property, which constituted an unreasonable seizure. (*Id.*, PageID #234 (Count X).) Also, Plaintiff alleges that Defendants retaliated against her for exercising her legal

rights by initiating "wrongful eviction proceedings" and by seizing her property. (*Id.* (Count XII).)

To state a claim under Section 1983, Plaintiff must allege: (1) "a right secured by the United States Constitution;" and (2) "the deprivation of that right;" (3) "by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (abrogated on other grounds)). Defendants argue that Plaintiff's Section 1983 claims fail as a matter of law because private parties do not become State actors merely by resorting to the State courts to pursue an eviction. (ECF No. 41, PageID #311–12.)

Generally, private landlords are not considered State actors and do not act under color of State law simply by filing an eviction proceeding. *Hill v. Langer*, 86 F. App'x 163, 166 (6th Cir. 2004). Taking Plaintiff's allegations as true, Defendants did not act under color of State law. Even if a private person maliciously or wrongfully invoked the procedures under State law to secure an eviction, doing so does not, without more, make him a State actor for purposes of Section 1983. *Partin v. Davis*, 675 F. App'x 575, 586 (6th Cir. 2017) (citing *Revis v. Meldrum*, 489 F.3d 273, 288–92 (6th Cir. 2007)). So long as the State procedures are presumptively valid, a private party does not become a state actor simply by invoking those procedures in bad faith. *Id.*

**I.B. Section 1985 Claim**

In Count XI, Plaintiff alleges that Defendants violated 42 U.S.C. § 1985 by conspiring to obtain unlawful eviction orders through false sworn statements

"regarding knowledge of the registered agent" and coordinating execution of the eviction orders to seize and destroy Plaintiff's business property. (ECF No. 14, PageID #234.) Presumably Plaintiff relies on Section 1985(3) because she is not an officer of the United States, and the allegations of the second amended complaint do not allege a conspiracy to deter her from attending or participating in the eviction proceedings. *See* 42 U.S.C. § 1985(1) & (2). To the contrary, the record in those proceedings shows that Ms. Rielinger voluntarily sought dismissal from those proceedings.

Under the remaining provision, 42 U.S.C. § 1985(3), a plaintiff must plead (1) a conspiracy involving two or more persons (2) for the purpose of depriving her, directly or indirectly, of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). Under the first element, members of the same entity do not amount to two separate "people" to form a conspiracy. *Id.*; *Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). Under the "intracorporate conspiracy doctrine," a business cannot conspire with its own agents or employees for purposes of a § 1985(3) claim. *Johnson*, 40 F.3d at 839–40.

Here, the only remaining Defendants include Cleveland Chinatown Development and two of its agents, Nancy Liang and Shaojia Huang. Accordingly, all remaining Defendants are part of the same entity and cannot form a conspiracy. Moreover, Plaintiff pleads no more than a conclusory allegation that Defendants

conspired to obtain and execute wrongful eviction orders without providing any allegations showing such a civil rights conspiracy. *Amadasu*, 514 F.3d at 507. Therefore, the claim fails to withstand Defendants' motion in any event.

* * *

Because Defendants do not become State actors simply by engaging in State litigation or procedures, the Court **GRANTS** Defendants' motion for judgment on the pleadings, leaving only Plaintiff's claims under State law.

## II. State-Law Claims

Plaintiff's remaining claims arise under State tort law. After applying New Hampshire's choice-of-law rules, the Court examines whether each claim that Plaintiff asserts under State law withstands Defendants' motion for judgment on the pleadings. The Court does so mindful that it is not exercising appellate review over the eviction proceedings in State court and giving Plaintiff the benefit of the doubt that she is not seeking merely to relitigate the issues resolved in those proceedings. Instead, the Court assumes that Ms. Rielinger seeks to recover for the loss or damage to her property that she alleges Defendants caused.

### II.A. Choice of Law

Plaintiff initially filed this action in New Hampshire, making it the forum State whose law supplies the conflict of laws rules that decide which State's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In making this choice of law, New Hampshire law balances five "choice-influencing considerations": (1) "the predictability of results"; (2) comity among the States within the federal system; (3) judicial economy; (4) "advancement of the

governmental interest of the forum"; and (5) "the court's preference for what it regards as the sounder rule of law." *Keeton v. Hustler Magazine*, 549 A.2d 1187, 1192 (N.H. 1988) (quoting *LaBounty v. American Ins. Co.*, 451 A.2d 161, 163 (N.H. 1982)).

While the New Hampshire Supreme Court has rejected the traditional rule "that the law of the forum where the injury occurs is paramount," the result here is essentially the same. *LaBounty*, 451 A.2d at 163. The first factor applies only in disputes involving contracts or similar transactions, which is not the case here. *Keeton*, 549 A.2d at 1194. The second factor, maintenance of good relations among the states, "requires only that the court not apply the law of a state that does not have a substantial connection with the facts being litigated." *Id.* Plaintiff received phone calls and a letter at her home in New Hampshire, but the vast majority of the disputed facts occurred in Cleveland, Ohio. Simplification of the judicial task is best served by applying the law of the State where most of the events at issue occurred, which also happens to be the State in which the Court sits. And New Hampshire's interest is "minimal and arises only from the fact that the [Plaintiff] was domiciled in the State," meaning New Hampshire has only a limited interest in applying its law to the dispute at issue. *LaBounty*, 451 A.2d at 163.

Because a majority of the facts arise from a dispute that occurred in Cleveland, Ohio and involves property allegedly lost or damaged there, the Court determines that Ohio law governs Plaintiff's claims in Counts I through VII and Counts XIII through XVI.

### II.B. Application of Ohio Law to Plaintiff's Claims

When exercising diversity jurisdiction, the Court applies Ohio substantive law according to the decisions of the Ohio Supreme Court. *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020). Where the Ohio Supreme Court has not spoken on an issue, the Court must "look to the decisions of [Ohio's] lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the issue." *Id.*

#### 1. Intrusion Upon Seclusion and Intentional Racial Hatred Harassment and Blackmail (Count I)

Plaintiff alleges that Defendants intruded upon her solitude and private affairs by "directing unwanted, harassing, threatening, and coercive calls and messages" to her while she was in New Hampshire. (ECF No. 14, PageID #230.) Under Ohio law, the tort of intrusion upon seclusion requires: (1) an intentional intrusion, physical or otherwise, upon the solitude or seclusion of another or her private affairs or concerns; and (2) the intrusion is highly offensive to a reasonable person. *Sustin v. Fee*, 69 Ohio St. 2d 143, 145, 431 N.E.2d 992 (1982). Ohio courts consider various factors when considering whether a defendant's telephone calls to a plaintiff are "offensive or outrageous enough to support an actionable claim" of intrusion of seclusion, including the "number of calls, the content of the calls, the time of day that the calls were made, and whether the calls were accompanied by other contacts with the defendant." *Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 453 (6th Cir. 2011).

According to the second amended complaint, Ms. Rielinger received one phone call demanding money in exchange for her property and one written "ransom note"

demanding money in exchange for her property. (ECF No. 14, PageID #229.) An occasional phone call, message, or written communication regarding the property at issue or the eviction proceedings does not rise to the level that Ohio courts require to support a cause of action. *Id.* Additionally, Plaintiff alleges that Dave Thompson and Philip McCall were the parties who contacted her, and those individuals are no longer Defendants in this case.

In this count, Plaintiff also includes a claim for "intentional racial hatred harassment and blackmail." But Ohio law does not recognize such a cause of action. The closest Ohio law comes to such a claim is Section 2307.70 of the Ohio Revised Code, which creates a civil cause of action for personal injury or property damage arising from acts of ethnic intimidation. But nothing about the allegations of the second amended complaint even suggests a factual predicate for application of this statute here.

As for blackmail, Ohio law authorizes a civil action for criminal acts. *See* Ohio Rev. Code § 2307.60. Ohio law includes blackmail under its extortion statute, which prohibits a threat to commit any felony or "to damage any person's personal or business repute, or to impair any person's credit." *Id.* § 2905.11(1) & (5). But the second amended complaint does not identify which, if any, of the remaining Defendants allegedly engaged in such conduct. By using the general term "Defendants" to describe the conduct of which she complains, Plaintiff engages in improper group pleading and fails to place each of the remaining Defendants on notice of the claims against which each must defend.

For these reasons, the Court **GRANTS** Defendants' motion for judgment on the pleadings on Count I in its entirety.

### 2. Intentional Infliction of Emotional Distress (Count II)

Under Ohio law, a claim for intentional infliction of emotional distress requires a plaintiff to plead and prove four elements: (1) "conduct so extreme and outrageous in character that it is considered utterly intolerable in a civilized society"; (2) "the defendant either intended to cause or knew or should have known that his conduct would cause the plaintiff emotional distress"; (3) the defendant's conduct proximately caused the plaintiff's emotional distress, and; (4) "the plaintiff's emotional distress was both severe and debilitating." *Swartz v. DiCarlo*, No. 1:12-cv-3112, 2014 U.S. Dist. LEXIS 138271, at *9 (N.D. Ohio Sept. 29, 2014) (citing *Cooper v. Metal Sales Mfg. Corp.,* 104 Ohio App. 3d 34, 660 N.E.2d 1245, 1250–51 (1995)).

As a matter of law, Plaintiff's claim fails for many reasons. First, Plaintiff pleads no operative facts even approaching the degree of outrageous conduct necessary to support a claim for the intentional infliction of emotional distress. Such a claim contemplates conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 453 N.E.2d 666 (1983). Taking Plaintiff's claims as true, Defendants misrepresented facts in eviction proceedings to obtain move-out orders and then destroyed or stole Plaintiff's personal items. While reprehensible, and the possible basis to reopen those eviction proceedings, such actions do not, as a matter of law, approach the degree necessary to state a claim. Additionally, Plaintiff does not plead

anything other than bare, conclusory facts of her suffering. There is no allegation and no reason to believe that her distress is "severe" or "debilitating." For these reasons, the Court **GRANTS** Defendants' motion on this claim.

### 3. Civil Conspiracy (Count III)

Under Ohio law, a civil conspiracy claim is "derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Morrow v. Reminger & Reminger Co.*, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 40 (Ohio Ct. App.) (citations omitted). Because each of Plaintiff's other claims under State law fails as a matter of law, her civil conspiracy claim cannot stand on its own. Therefore, the Court **GRANTS** Defendant's motion on this claim.

### 4. Conversion (Count IV)

Plaintiff alleges that Defendants intentionally exercised control over her tangible property without lawful justification, disposed of that property, and permanently deprived her of it. Conversion is "any exercise of dominion or control wrongfully exerted over the personal property of another in denial of, or under a claim inconsistent with, the owner's rights." *Dice v. White Family Cos.*, 2007-Ohio-5755, 878 N.E.2d 1105, ¶ 17 (Ohio Ct. App.). To state a claim for conversion, a plaintiff must plead that: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of the plaintiff's property rights; and (3) damages." *Mathews v. Cooper*, 2021-Ohio-2768, ¶ 46 (Ohio Ct. App.)

Generally, procedural due process protects property rights. *Foster v. City of Wickliffe*, 2007-Ohio-7132, 88 N.E.2d 422, ¶ 86 (Ohio Ct. App.). After a lawful eviction

proceeding, tenants have the opportunity to remove their belongings before the court-ordered move-out date. *Pertuset v. Hull*, 2022-Ohio-2348, ¶ 38 (Ohio Ct. App.) (citing *Mathews*, 2021-Ohio at ¶¶ 47–49). Where a person fails to remove her belongings within the grace period provided, Defendants do not "wrongfully" control or exercise dominion over personal property. *Id.* By failing to remove her property, Plaintiff dispossessed herself of her personal items. Alternatively, the tenants did, and any remedy lies against them. For these reasons, the Court **GRANTS** Defendants' motion for judgment on the pleadings on Count IV.

#### 5. Civil Theft / Trespass to Chattels (Count V)

In Count V, Plaintiff brings two separate claims: one for civil theft and a second for trespass to chattels. Plaintiff pleads that "Defendants intentionally took and destroyed Plaintiff's property with the purpose of benefitting themselves and harming Plaintiff" and that she suffered financial losses. (ECF No. 14, PageID #232.)

A civil action for theft is not a common-law tort; rather, the claim is statutory in Ohio. *Eastlake Milford, LLC v. Jones*, 2025-Ohio-5638, ¶ 4 (Ohio Ct. App.). A person may recover damages for theft of property pursuant to Section 2307.60(A)(1), which authorizes a civil action to recover for a criminal act. Here, Plaintiff was deprived of her property pursuant to court-ordered eviction notices. No criminal act occurred. Put another way, Defendants did not commit theft or steal Plaintiff's property. Plaintiff complains that she lost her property in eviction proceedings to which she was not (by her choice) a party. Therefore, Ohio's statute providing a civil remedy for criminal acts does not apply on the facts alleged.

As for trespass to chattels, a plaintiff must show an intentional, unauthorized act that dispossessed or deprived plaintiff of property or otherwise impaired the condition or value of the property. Restatement (Second) of Torts § 218; *Machlup v. Bowman*, 2021-Ohio-4370, ¶ 8 (Ohio Ct. App.) No such act appears in the second amended complaint or in the record. Defendants obtained eviction orders, which led to Plaintiff's deprivation of her personal property.

For these reasons, the Court **GRANTS** Defendants' motion on Count V.

### 6. Criminal Damage (Count VI)

For her criminal damage claim, Plaintiff only names Defendants Debra Brown and Philip McCall, alleging that each damaged certain property, including antique furniture and "$500k worth [of] property." (ECF No. 14, PageID #232.) Because those Defendants were previously dismissed from this case, this claim cannot go forward. Therefore, the Court **GRANTS** Defendants' motion for judgment on Count VI.

### 7. Defamation (Count VII)

For Count VII, Plaintiff claims that Defendants defamed her by making "false public filings and statements" that injured her reputation and "the reputation of the companies she invested in and their credit standing." (ECF No. 14, PageID #232.) This claim fails as a matter of law because a "statement made in judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears." *Hecht v. Levin*, 66 Ohio St. 3d 458, 460, 613 N.E.2d 585 (1993). Also, Plaintiff alleges that Defendants Brown and McCall defamed her among her business associates and

employees. Those Defendants are no longer parties to this case. Therefore, the Court **GRANTS** Defendants' motion on Count VII.

### 8. Tortious Interference (Count VIII)

Plaintiff claims that Defendants illegally deprived her and her companies of access to personal property and "blocked business conduction [*sic*] for over three months." (ECF No. 14, PageID #233.) Plaintiff asserts "tortious interference" baldly, which is not a claim under Ohio law. Again, the Court construes Plaintiff's *pro se* complaint liberally and attempts to identify the claim at issue. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004),

Tortious interference with a business relationship happens where a person, "without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). Plaintiff claims that Defendants interfered with her commercial interest in the tenants by refusing to make repairs to the property and by destroying her inventory and equipment. (ECF No. 14, PageID #235.) But there is no third-party actor here. Plaintiff invested in her own businesses, which were commercial tenants of Defendants. Defendants' decision to evict the tenants might have had adverse consequences for Ms. Rielinger, but that action does not support a claim for tortious interference with her business. Accordingly, the Court **GRANTS** Defendants' motion for judgment on Count VIII.

### 9. Fraud on the Court (Count XIII)

Under Rule 60(B)(5) of the Ohio Rules of Civil Procedure, which do not apply in federal court, fraud on the court provides a basis for seeking relief from judgment. It does not provide a basis for a separate civil action. *See Coulson v. Coulson*, 5 Ohio St. 3d 12, 15, 448 N.E.2d 809 (1983) (noting that the proper procedure to raise the issue requires a motion in the court where the fraud allegedly occurred). Here, Plaintiff alleges that Defendants "knowingly made false sworn statements" and "willfully misled the court." (ECF No. 14, PageID #235.) She must raise such a claim in the court where these events occurred. Ohio law does not provide a separate civil action for them. Therefore, the Court **GRANTS** Defendants' motion on Count XIII.

### 10. Breach of Lease and Implied Warranty (Count XIV)

To state a claim for a breach of lease under Ohio law, a plaintiff must allege (1) "an existing valid contract between the parties," (2) that the defendant failed to perform when performance was due, and 3) damages. *Gilman v. Physna, LLC,* 2021-Ohio-3575, ¶ 17 (Ohio Ct. App.) (citing *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41). By her own admission, Plaintiff was not the lessee of Cleveland Chinatown Development and did not have a lease with any Defendant. (ECF No. 14, ¶¶ 2 & 17, PageID #221 & #224.) Therefore, Plaintiff cannot satisfy the first element for breach of contract. The Court notes that Plaintiff's claim of "implied warranty of liability" likely means "warranty of habitability." While Ohio law does recognize an implied warranty of habitability in rental agreements, again, Plaintiff does not have a lease agreement with Defendants, meaning she

cannot sustain a claim for breach of the warranty. Therefore, the Court **GRANTS** Defendants' motion on Count XIV.

### 11. Interference with Business Expectancy (Count XV)

This claim duplicates Count VIII. It suffers the same fate.

### 12. Punitive Damages (Count XVI)

In Ohio, punitive damages are not a stand-alone claim, but a "measure of damages." *Kwikcolor Sand v. Fairmount Minerals Ltd.*, 2011-Ohio-6646, ¶ 13 (Ohio Ct. App.). For a plaintiff to receive punitive damages, "there must be proof of an underlying independent compensatory damage claim." *Miller v. KeyBank Nat'l Ass'n*, 2006-Ohio-1725, ¶ 50 (Ct. App.). Under Ohio law, "no civil action may be maintained simply for punitive damages." *Watson v. Ford Motor Co.*, 2007-Ohio-6374, ¶ 73 (Ohio Ct. App.). Because Plaintiff fails to plead a claim that survives the Rule 12 stage, she has no claim for compensatory damages to support an award of punitive damages. Therefore, the Court **GRANTS** Defendant's motion on Count XVI.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to strike (ECF No. 45) but declines to consider the declarations for other reasons. Therefore, the Court **DENIES AS MOOT** Plaintiff's motion for leave to accept the Woodruff declaration one day late. (ECF No. 46.) The Court **GRANTS** Defendants' motion for judgment on the pleadings (ECF No. 41).

**SO ORDERED.**

Dated: October 13, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio